UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ELLWOOD CITY FORGE COMPANY,<br>ELLWOOD QUALITY STEELS COMPANY,<br>ELLWOOD NATIONAL STEEL<br>COMPANY, AND A. FINKL & SONS,<br><br>     *Plaintiffs*,<br><br>  V.<br><br>UNITED STATES,<br>     *Defendant*. | Court No. 23-00191 |

## COMPLAINT

Plaintiffs Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons (collectively, "Plaintiffs") file this complaint to contest certain aspects of the final results published by the United States Department of Commerce ("Commerce") in the first antidumping administrative review of Forged Steel Fluid End Blocks ("FEBs") from Italy for the July 23, 2020, to December 31, 2021, review period. The final results were published in the *Federal Register* on August 14, 2023 (88 Fed. Reg. 55,010).

By and through their attorneys, Plaintiffs allege and state as follows:

### JURISDICTION

1. Plaintiffs bring this action pursuant to Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (B)(iii). Consequently, this Court has jurisdiction over this matter by reason of 28 U.S.C. § 1581(c),

1

which confers upon the Court exclusive jurisdiction over civil actions commenced under Section 516A of the Act.

## STANDING

2.     Plaintiffs are all U.S. producers of a domestic like product to FEBs from Italy, the subject merchandise at issue in this appeal. Plaintiffs also actively participated in the antidumping administrative review that is the subject of this appeal insofar as Plaintiffs requested the administrative review and submitted facts and argument to Commerce during the administrative review. Accordingly, Plaintiffs are "interested parties" within the meaning of Section 771(9)(C) of the Act, as amended, 19 U.S.C. § 1677(9)(C), and have standing to commence this action pursuant to Section 516A(d) of the Act, 19 U.S.C. § 1516a(d), and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

3. Commerce published notice of the final results of the administrative review in the Federal Register on August 14, 2023. *See Forged Steel Fluid End Blocks from Italy: Final Results of the Antidumping Duty Administrative Review; 2020–2021*, 88 Fed. Reg. 55,010 (Aug. 14, 2023), and accompanying Issues and Decision Memorandum ("IDM") (together collectively, the "*Final Results*").

4.     This action was commenced with the filing of the Summons on September 13, 2023, within 30 days after publication of the *Final Results*. Accordingly, this action was timely commenced within the period specified in Section 516A(a)(2)(A)(i)(I) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i)(I), and Rule 3 of the Rules of this Court.

5. This Complaint is filed within thirty days after filing of the Summons in this action and is therefore timely under the statutorily-prescribed time limits set forth in Section 516A(a)(2)(A) of the Act, 19 U.S.C. § 1516a(a)(2)(A), and Rule 3 of the Rules of this Court.

## STATEMENT OF FACTS

6. On January 31, 2022, Plaintiffs alleged that imports of FEBs from Italy were being sold by Lucchini Mamé Forge S.p.A. ("Lucchini") at less than fair value, and requested that Commerce conduct an antidumping administrative review of Lucchini for the July 23, 2020, to December 31, 2021, period of review ("POR").

7. On March 9, 2022, Commerce initiated an antidumping administrative review concerning FEBs from Italy. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 13,252 (Mar. 9, 2022). On March 23, 2022, Commerce selected Lucchini as the sole mandatory respondent in the administrative review, and thereafter issued an initial antidumping questionnaire to Lucchini.

8. Lucchini responded to Commerce's initial questionnaire, providing certain information concerning Lucchini's production of subject FEBs in Italy, its U.S. sales, and its production costs. However, Lucchini failed to provide certain key information requested by Commerce. Accordingly, Plaintiffs submitted several rounds of comments to Commerce identifying deficiencies in Lucchini's response, which were followed by supplemental questionnaires issued by Commerce to Lucchini. Further details relevant to each of Plaintiffs' claims are discussed below.

### Constructed Value Profit

9. Lucchini's response to Commerce's initial questionnaire reported that Lucchini lacked home market or third country sales of the foreign like product during the POR.

Therefore, Commerce's antidumping duty calculation would be based upon a comparison of U.S. price to constructed normal value. One element of constructed normal value that 19 U.S.C. § 1677b(e)(2) requires Commerce to include is an amount for profit, as well as selling, general, and administrative expenses.

10. On September 14, 2022, consistent with its usual practice, Commerce requested that the parties to the proceeding submit potential sources of constructed value ("CV") profit and selling expense data.

11. Plaintiffs and Lucchini each responded to Commerce's request on September 23, 2022. Plaintiffs submitted data from Officina Meccanica Roselli O.M.R. S.r.l. ("OMR"), advocating that Commerce use only OMR's data, but also supplying data from Metalcam S.p.A. ("Metalcam") and Cogne Acciai Speciali S.p.A. ("Cogne") as potential alternatives. Plaintiffs argued by reference to supporting factual information that OMR and Metalcam were, in order of preference, each more viable and probative data sources than Cogne. Lucchini submitted data for Asoforge S.R.L ("Asoforge"), FOC Ciscato S.p.A. ("Ciscato"), Fomec S.p.A. ("Fomec") and OFAR S.p.A. ("OFAR"), broadly asserting that all of these entities had "operations, products and customer base" similar to Lucchini, without identifying any supporting documentation. Lucchini furthermore proffered evidence concerning Cogne's lack of FEB production.

12. In selecting among potential sources for CV profit and selling expense data, Commerce typically considers the following four factors:

    a. The similarity between potential surrogate company's business operations and products and the respondent's business operations and products;

    b. The extent to which a potential surrogate company has sales in the United States and the home market;

4

      c.    The contemporaneity of the surrogate data to the period of {review}; and

      d.    The similarity of the customer base between a potential surrogate company and the respondent.

13. On October 4, 2022, Plaintiffs and Lucchini each submitted rebuttal factual information concerning the potential sources of CV profit and selling expense data sources placed on the record. In particular, Plaintiffs supplied factual information concerning the operations and product lines of Asoforge, Ciscato, and Fomec which established that none of these entities produced FEBs during the POR.

14. On January 9, 2023, Plaintiffs submitted comments in advance of Commerce's preliminary results, advocating that Commerce base its CV profit calculation on data from OMR alone, asserting that Metalcam's data were the "next most reasonable source" of CV profit information, and acknowledging that there was "no direct evidence that Cogne itself produced FEBs during 2021." With respect to the alternative data sources submitted by Lucchini, Plaintiffs argued that all were unusable, insofar as none came from producers of FEBs, and each company's products and customers were dissimilar to those of Lucchini.

15. Commerce's *Preliminary Results* acknowledged that Asoforge produced dissimilar products and excluded it from the CV profit and selling expense calculation, but averaged the CV profit and selling expense data from the remaining six producers (*i.e.*, OMR, Metalcam, Cogne, Ciscato, Fomec, and OFAR). In doing so, Commerce erroneously stated that all six companies produced FEBs. *See Forged Steel Fluid End Blocks From Italy: Preliminary Results and Rescission of Antidumping Duty Administrative Review in Part; 2020–2021*, 88 Fed. Reg. 7,686 (Feb. 6, 2023), and accompanying Preliminary Issues and Decision Memorandum ("PDM") at 12 (together collectively, the "*Preliminary Results*").

16.     Relying on Commerce's usual four-factor analysis, Plaintiffs' case brief reasserted that OMR and, if necessary, Metalcam, were the only reasonable sources of CV profit and selling expense data.  As Plaintiffs explained, both OMR and Metalcam produced FEBs, none of the other potential data sources produced a single FEB, and OMR and Metalcam otherwise satisfied all of Commerce's four factors.  Put differently, OMR and Metalcam were superior to all potential alternatives as regards subject FEB production, and none of the potential alternative sources was superior to OMR or Metalcam with respect to any other factor.  Plaintiffs furthermore established that, Ciscato and OFAR were especially ill-suited to inclusion in the calculation insofar as both had the further defect of selling to a dissimilar customer base.  Therefore, considered in terms of Commerce's ordinary four-factor analysis, all other potential sources were inferior to OMR and Metalcam.

17.     Commerce agreed in its *Final Results* that OMR and Metalcam should continue to be included in the CV profit calculation, and that Fomec and OFAR should be excluded from the calculation for lack of record evidence that either company produces identical merchandise.  However, Commerce persisted in including data from Cogne and Ciscato in the CV profit calculation as well, despite the fact that neither produced FEBs during the POR.  IDM at 15.

18.     Commerce's *Final Results* calculated a weighted average *ad valorem* dumping margin of 2.97 percent for Lucchini.  88 Fed. Reg. at 55,010.  Had Commerce adjusted its calculations of CV profit and selling expenses as advocated by Plaintiffs, Commerce would have calculated a higher constructed normal value and, as a result, a higher dumping margin.

## Affiliated Purchases of Ingots

19.     Lucchini's response to Commerce's initial questionnaire reported that the ingots it used to produce subject FEBs were produced by an affiliated party, Lucchini Industries S.r.l.

6

("LIND"). Ingots used to produce subject FEBs are of a limited number of steel grades. The transfer price paid by Lucchini to obtain these ingots became a significant issue in this proceeding.

20. 19 U.S.C. § 1677b(f)(2) empowers Commerce to disregard transactions between affiliated parties if the affiliated transfer price does not reflect normal market value. Given this authority, page D-4 of Commerce's initial questionnaire instructed Lucchini to report LIND's sales of "the identical input to unaffiliated customers in {Italy}." But Lucchini's response failed to provide information concerning LIND's sales of ingots to unaffiliated parties on a grade-specific basis. This precluded an apples-to-apples comparison of LIND's transfers to Lucchini and LIND's sales to non-affiliates. On June 28, 2022, Plaintiffs submitted deficiency comments, requesting that Commerce solicit this information.

21. On August 15, 2022, Commerce issued a supplemental questionnaire to Lucchini requesting in Questions 7 and 8 that Lucchini provide, *inter alia*, "documentation to demonstrate the market price of ingots of the same grade as those sold to Lucchini for the production of {subject FEBs}."

22. On September 8, 2022, Lucchini responded that "the stainless steel grades used in FEB production are sold by {Lucchini's affiliate} only to Lucchini" and provided a list of its affiliate's ingot sales prices.

23. On October 11, 2022, Plaintiffs submitted comments explaining that the ingot sales information contained in Lucchini' supplemental questionnaire response lacked data necessary to meaningfully understand the characteristics of the products being sold. Given Lucchini's persistent failure to provide usable information to conduct the analysis required by 19 U.S.C. § 1677b(f)(2), Plaintiffs again requested that Commerce instruct Lucchini to provide

documentation to demonstrate both "the market price of stainless steel ingots sold by {Lucchini's affiliate} to unaffiliated customers during the period of review" and "the chemical and physical properties of these stainless steel ingots."

24. Commerce issued a further supplemental questionnaire to Lucchini on October 28, 2022. Question 8 instructed Lucchini as follows:

> You have reported that the steel grade sold by LIND via LRS to Lucchini is {a particular grade} and that this grade is not sold to unaffiliated customers. You reference Exhibit SD-7.a which appears to include a schedule of LRS' sales to affiliated and unaffiliated customers. It is not clear whether the steel grades (column I) reflect standard steel grades or internal grades used by LRS for record-keeping purposes. Similarly, we note that the field customer steel grade appears to possibly represent the customer's internal codes for different steel grades rather than standardized steel grades. Moreover, we note that the description field indicates that a single description corresponds to multiple steel grades and customer steel grades…So that we have a clear understanding of the information presented in Exhibit SD-7.a, please revise this exhibit to include an additional sheet which, for each steel grade listed in column f of the pivot table, you also report the following information: applicable European standard (steel name and number) and the applicable US standard (e.g., AISI and UNS).

25. Question 13 of the same supplemntal questionnaire furthermore requested that Lucchini address the following:

> Explain whether either LIND or LRS sell stainless steel ingots to unaffiliated customers. If so, state the total quantity and value of such sales and provide a schedule which breaks down the totals by European standard.
>
> If neither LIND nor LRS sells stainless steel ingots to unaffiliated customers, explain whether either company purchases stainless steel ingots from unaffiliated customers. If so, state the total quantity and value of such sales and provide a schedule which breaks down the totals by European standard.

26. Despite having been given a third chance to provide basic information necessary to undertake the comparison required by 19 U.S.C. § 1677b(f)(2), Lucchini again failed to do so. It confirmed in its November 18, 2022, supplemental questionnaire response that the "steel grades" it had reported were merely an "internal steel grade name used by the company" and

"the customer's internal codes for different steel grades rather than standardized steel grades." Lucchini purported to revise its earlier database to include the applicable European standard and applicable U.S. standard, but also added a third unsolicited and unexplained category, *i.e.*, "for the sales of proprietary customer specfic grades, whether these grades are carbon, alloy or stainless steel grades." Lucchini otherwise reported that "LIND and LRS do not sell stainless steel ingots to unaffiliated customers."

27. Recognizing that a major gap in the administrative record still persisted, Commerce issued yet another supplemental questionnaire to Lucchini on December 16, 2022, noting in Question 2 that Lucchini still had not provided "information pertaining to the market price of stainless steel ingots," requesting "a market price for stainless steel ingots," as well as several specific revisions to and clarifications of Lucchini's prior responses concerning its affiliates' ingot sales.

28. Lucchini claimed in its December 23, 2022, response that it "is not able to provide its market price" for the relevant type of ingot, and claimed for the first time that "this specific product is typically not sold on the open market as such." Lucchini asserted that it was "not aware of any significant market for this product in Italy, or elsewhere."

29. In comments submitted in advance of Commerce's *Preliminary Results*, Plaintffs observed that Lucchini had failed four separate times to supply data that would provide a benchmark to facilitate an apples-to-apples analysis of whether Lucchini's reliance on affiliated ingot supplies had distorted its production costs. Given this imperfect record, Plaintiffs filtered the data Lucchini had provided to come up with the most reasonable non-affiliated benchmark then available. Comparing this benchmark to Lucchini's affiliated transfer prices demonstrated

9

that Lucchini's transfer prices were understated and should be adjusted pursuant to 19 U.S.C. § 1677b(f)(2).

30. Commerce, however, made no adjustment for Lucchini's affiliated ingot purchases in the *Preliminary Results*, instead stating its "inten{t} to request additional information from Lucchini and the petitioner regarding the market prices of ingots." PDM at 11.

31. Commerce therefore issued a post-preliminary supplemental questionnaire on January 31, 2023, providing both Plaintiffs and Lucchini an opportunity to "submit new factual information concerning the market price of stainless steel ingots," to be followed by a further opportunity to submit "information to rebut, clarify or correct factual information submitted on the market price of stainless steel ingots."

32. In response, on February 10, 2023, Plaintffs submitted the following: (1) general information on stainless steel alloy surcharges; (2) information concerning the downstream products made by one of Lucchini's unaffiliated customers; (3) Eurostat import AUV data for stainless steel ingots and related information from the European Union's Harmonized Tariff Schedule; and (4) an unaffiliated third party's POR purchase price data for stainless steel ingots used to produce FEBs in the United States. Lucchini also submitted a response, but provided no data therein. Instead, Lucchini continued to rely on the not-credible claim that no market price for ingots existed, and provided a sampling of communications intended to corroborate this assertion.

33. Plaintiffs submitted information in rebuttal on February 17, 2023, establishing, *inter alia*, that sellers in Europe and elsewhere did offer semi-finished ingots and billet for sale. Lucchini also filed a rebuttal submission. Most relevant here, this submission contained

unsolicited data concerning certain logistical aspects of Lucchini's sales of ingots to affiliates and non-affiliates.

34. On February 23, 2023, Plaintiffs requested that Commerce reject the unsolicited, untimely new factual information contained in Lucchini's purported "rebuttal," as it did not address, much less rebut, anything that Plaintiffs had submitted in its February 10, 2023, ingot price submission. Lucchini made no response to Plaintiffs' request at any point during the administrative proceeding.

35. Plaintiffs reiterated their request to reject Lucchini's untimely new factual information in their March 8, 2023, Case Brief. Plaintiffs furthermore argued that the ancillary aspects belatedly disclosed by Lucchini's February 17, 2023, "rebuttal" submission were not adequately substantiated, came too late to permit vetting in the form of deficiency comments and supplemental inquiries, and were in any event irrelevant to a comparison of the price that Lucchini paid to its affiliate for ingots, versus the price for such ingots on the open market. In order of reasonableness, Plaintiffs requested that Commerce conduct the analysis under 19 U.S.C. § 1677b(f)(2) by reference to (1) the unaffiliated third party's POR purchase price data for stainless steel ingots used to produce FEBs in the United States provided by Plaintiffs; (2) Lucchini's affiliate's ingot sales to unaffiliated parties *absent* the ancillary adjustments; or (3) Eurostat AUV data on stainless steel ingot imports.

36. Commerce's *Final Results* never addressed Plaintiffs' repeated requests to reject Lucchini's untimely February 17, 2023, disclosures. Instead, Commerce credited Lucchini's belated, untested claims in full and devised an entirely new adjustment to Lucchini's affiliate's ingot sales to unaffiliated parties that drastically distorted Commerce's 19 U.S.C. § 1677b(f)(2) analysis. Commerce rejected Plaintiffs' FEB ingot purchase data, despite its superior product

specificity, merely because it concerned sales in the United States, without explaining why geographic specificity was more important than product specificity, particularly considering Lucchini's repeated claims that there were no relevant sales in Italy of which to speak.

37. Commerce's *Final Results* calculated a weighted average *ad valorem* dumping margin of 2.97 percent for Lucchini. 88 Fed. Reg. at 55,010. Had Commerce calculated the adjustment to Lucchini's affiliated ingot purchases using *any* of the methodologies advocated by Plaintiffs, Commerce would have calculated a higher dumping margin.

On-Site Verification

38. On June 16, 2022, nearly fourteen months before the *Final Results*, Plaintiffs submitted a timely request that Commerce undertake on-site verification of Lucchini in connection with this administrative review.

39. Plaintiffs reiterated their request that Commerce undertake on-site verification of Lucchini in Plaintiffs' July 1, 2023, request for an *ex parte* meeting to discuss recent deficiency comments submitted by Plaintiffs.

40. Plaintiffs again reasserted their request that Commerce undertake on-site verification of Lucchini in Plaintiffs' January 9, 2023, comments in advance of Commerce's *Preliminary Results*.

41. Although Lucchini submitted comments in response to Plaintiffs' January 9, 2023, submission, those comments did not object to Plaintiffs' renewed request for verification.

42. Commerce's *Preliminary Results* made no mention of whether or not Commerce would be undertaking on-site verification of Lucchini in this administrative review.

43. Plaintiffs yet again requested that Commerce undertake on-site verification in their March 8, 2023, administrative case brief. At that time, Plaintiffs observed that Commerce

still had nearly five full months before the fully extended deadline to issue final results in the administrative review.

44. In particular, Plaintiffs argued in their case brief that Commerce was required by the statute (19 U.S.C. § 1677m(i)(3)) and Commerce's regulations (19 C.F.R. § 351.307(b)(1)(v)) to verify Lucchini's reporting, because Commerce had not conducted on-site verification in any prior segment of this proceeding, and certainly not in a prior adminsitative review, insofar as there was no "prior" administrative review. Plaintiffs cited examples of proceedings in which Commerce had relied upon this rationale to conduct verification in the first administrative review of an order, as well as legislative history supporting this interpretation. In addition, Plaintiffs noted that Commerce was undertaking on-site verification in the then-ongoing first administrative review of the countervailing duty order on FEBs from India.

45. In the alternative, Plaintiffs argued that good cause to verify Lucchini's reporting existed within the meaning of 19 U.S.C. § 1677m(i)(3) and 19 C.F.R. § 351.307(b)(1)(iv) because, *inter alia*, the pandemic had short-circuited Commerce's usual on-site verification practices during the original antidumping investigation, and Lucchini had furthermore drastically altered its U.S. selling operations and other aspects of its sales reporting between the period of investigation and the first administrative review period.

46. On March 8, 2023—the very same day as Plaintiffs filed their case briefs in the antidumping administrative review—Commerce issued an on-site verification preparedness questionnaire to Lucchini in the parallel countervailing duty administrative review concerning FEBs from Italy. Notably, the fully extended deadline for the final results in that countervailing duty administrative review was identical to the deadline for the final results in the antidumping administrative review of FEBs from Italy. Plaintiffs submitted notice of Commerce's intent to

verify Lucchini's responses in the countervailing duty review on the record of the antidumping administrative review on March 10, 2023, therein reiterating Plaintiffs' request for on-site verification of Lucchini in this antidumping proceeding.

47. Commerce fully extended the deadline for issuance of the final results of the administrative review, publishing the same on August 14, 2023, nearly fourteen months after Plaintiffs' initial request for on-site verification.

48. Commerce's *Final Results* asserted that Commerce was not obliged to conduct verification because 19 U.S.C. § 1677m(i)(3) and 19 C.F.R. § 351.307(b)(1)(v) did not apply until the third administrative review of an order. IDM at 6. Commerce did not address the contrary administrative precedent or legislative history cited by Plaintiffs. *See id.* Commerce further summarily declined to find "good cause" to conduct verification, given Lucchini's assertedly "fulsome" responses to Commerce's questionnaires, without explaining how this tautology established that verification of those responses was unnecessary. *Id.* Commerce did not address the relevance of changes in Lucchini's reporting highlighted by Plaintiffs. *See id.* Commerce furthermore asserted that it was not obliged to conduct on-site verification, and that the questionnaire-in-lieu-of-verification relied upon during the pandemic-era investigation was legally sufficient. *Id.* at 7-8. Even assuming, *arguendo*, that the shortcomings of the questionnaire-in-lieu-of-verification procedures were practical rather than legal in nature, Commerce still did not acknowledge these shortcomings or address why it treated them as irrelevant to the question of whether there was good cause to conduct verification according to its usual on-site practices in this administrative review. *See id.*

49. By failing to conduct on-site verification, Commerce failed to observe statutorily and regulatorily mandated prerequisites to the promulgation of its *Final Results*. Indeed, even if

some procedure short of on-site verification were permissible as a legal matter, Commerce still undertook no such procedure in this administrative review. Commerce furthermore failed to adequately address Plaintiffs' arguments in concluding that good cause to conduct verification did not exist. Finally, Commerce's inaction deprived Plaintiffs of valuable factual information in the form of a verification report.

## CLAIMS

### Count 1

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. Pursuant to 19 U.S.C. § 1677b(e)(2) Commerce is required to include an amount for profit, as well as selling, general, and administrative expenses when calculating constructed normal value. Commerce's standard practice when selecting among potential data sources is to apply a four-factor analysis. In particular, Commerce has recognized a preference for data that reflects "production and sales of the foreign like product, *i.e.*, the merchandise under consideration." *Certain Oil Country Tubular Goods from Saudi Arabia*, 79 Fed. Reg. 41,986 (July 18, 2014) (LTFV Final), IDM Comment 4.

52. Plaintiffs submitted factual information establishing that, of the potential data sources on the administrative record, only OMR and Metalcam reflected production and sales of the foreign like product. Plaintffs furthermore established that OMR and Metalcam satisfied all four of Commerce's typical evaluative factors, and that no competing data source was superior to OMR and Metalcam in these respects. Lucchini itself proffered data establishing that Cogne did not produce FEBs during the relevant period, a fact that Plaintiffs repeatedly acknowledged. And Plaintiffs adduced information demonstrating that Ciscato's overall product line and customer base were dissimilar to those of Lucchini.

53. Commerce nevertheless included Cogne's and Ciscato's data in calculating CV profit, as well as selling, general, and administrative expenses in the *Final Results*. This was arbitrary, insofar as Commerce did not explain how Cogne's data or Ciscato's data was of superior (or even equivalent) quality, as compared to data from OMR and Metalcam. Nor did Commerce address Plaintiffs' arguments on this subject.

54. In supporting its decisions with substantial evidence, as required by 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce is obligated to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3); *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination."). Commerce failed to address such arguments, and otherwise rendered a determination that was unlawful and unsupported by substantial evidence in that Commerce unreasonably incorporated inferior data from Cogne and Ciscato into its CV profit, as well as selling, general, and administrative expense calculations.

## **Count 2**

55. Paragraphs 1 through 54 are incorporated herein by reference.

56. Pursuant to 19 U.S.C. § 1677b(f)(2), Commerce may disregard affiliated transactions where "any element of value…does not fairly reflect the amount usually reflected in sales of merchandise under consideration in the market under consideration."

57. Lucchini obtained ingots used to produce subject FEBs from affiliated parties, and was repeatedly asked by Commerce to supply information concerning the market price of such ingots. Lucchini repeatedly failed to do so.

58. Plaintiffs' comments in advance of Commerce's preliminary results analyzed Lucchini's data and devised a reasonable, albeit imperfect, comparison.

59. Following the preliminary results, Commerce provided Lucchini a fifth opportunity to provide a market benchmark, and Plaintiffs a first opportunity to do so. Plaintiffs provided Commerce with two viable benchmarks in response, as well as information about a non-affiliated customer of one of Lucchini's affiliates. Plaintiffs did not submit any new factual information concerning Lucchini's sales process or sales data, because Lucchini's description of its sales process and sales data were already part of the administrative record.

60. Lucchini submitted a "rebuttal" that contained an untimely disclosure of certain logistical aspects related to its affiliate's ingot sales and devised a new adjustment to account for this. Plaintiffs repeatedly requested that Commerce reject this untimely and unsolicited information. Commerce never acknowledged or addressed Plaintiffs' requests.

61. Plaintiffs' case brief argued in favor of the two benchmarks Plaintiff had provided, and against making adjustments for Lucchini's belatedly disclosed logistical considerations when conducting the benchmarking exercise under 19 U.S.C. § 1677b(f)(2). Commerce rejected Plaintiffs' benchmarks and adjusted its calculations to account for Lucchini's last-minute disclosure, without addressing many of Plaintiffs arguments.

62. In supporting its decisions with substantial evidence, as required by 19 U.S.C. § 1516a(b)(1)(B)(i), Commerce is obligated to address the relevant arguments of the parties. *See* 19 U.S.C. § 1677f(i)(3); *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination."). Commerce failed to address many of Plaintiffs' arguments and otherwise rendered a determination that was

unlawful and unsupported by substantial evidence in that Commerce's benchmarking analysis and treatment of affiliated input transactions arbitrarily adjusted prices to account for non-physical characteristics and preferenced country-specificity over product-specificity. Commerce compounded this error by violating its own instructions and regulations and not rejecting untimely filed new factual information.

### Count 3

63. Paragraphs 1 through 62 are incorporated herein by reference.

64. Pursuant to Section 782(i) of the Act, 19 U.S.C. 1677m(i), Commerce "shall verify all information relied upon in making—a final determination in a review under section 1675(a) of this title" where specified prerequisites are satisfied. Commerce's regulation at 19 C.F.R. § 351.307(b)(1)(v) further defines these prerequisites, such that Commerce "will verify" factual information in an administrative review where the request is timely and Commerce "conducted no verification under {Paragraph 351.307(b)(1)} during either of the two immediately preceding administrative reviews." Commerce has, in the past, interpreted these provisions as requiring verification in the first administrative review where the other prerequisites are met, and legislative history supports this interpretation. Commerce, moreover, conducted verification of the same respondent in the parallel countervailing duty administrative review of FEBs from Italy.

65. Plaintiffs' request for verification was timely, and Commerce did not conduct verification under 19 C.F.R. § 351.307(b)(1) during any preceding administrative review. Nor did Commerce conduct a lawful verification during the underlying less-than-fair-value investigation. Yet, Commerce refused to conduct verification in this administrative review, and failed to address material arguments raised by Plaintiffs. Commerce acted unlawfully by not

conducting an on-site verification before issuing the *Final Results*, and its determination is unsupported by substantial evidence.

## Count 4

66. Paragraphs 1 through 65 are incorporated herein by reference.

67. Pursuant to Section 782(i) of the Act, 19 U.S.C. 1677m(i), Commerce "shall verify all information relied upon in making—a final determination in a review under section 1675(a) of this title" where a "timely" request is made and "good cause for verification is shown." Commerce's regulation at 19 C.F.R. § 351.307(b)(1)(iv) likewise specifies that Commerce "will verify" factual information in an administrative review where "good cause for verification exists."

68. Plaintiffs established good cause for verification, yet Commerce refused to conduct verification in this administrative review. Commerce's explanation for finding good cause was unreasonable, devoid of substance, and otherwise failed to address material arguments advanced by Plaintiffs. Commerce thus acted unlawfully by not conducting an on-site verification before issuing the *Final Results*, and its determination is not supported by substantial evidence.

## REQUEST FOR JUDGMENT AND RELIEF

69. WHEREFORE, Plaintiffs respectfully request that this Court:

70. Hold that the portions of Commerce's *Final Results* that are complained of above are not supported by substantial evidence and are otherwise not in accordance with law;

71. Remand this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

72. Grant such further relief as this Court deems just and proper.

*   *   *

|  |  |
|---|---|
|  | Respectfully submitted, |
| October 13, 2023 | /s/ Myles S. Getlan |

Myles S. Getlan
Thomas M. Beline
James E. Ransdell

**CASSIDY LEVY KENT (USA) LLP**
900 19th Street, NW, Suite 400
Washington, D.C. 20006
Phone: (202) 567-2313
Fax: (202) 567-2301

*Counsel for Ellwood City Forge Company, Ellwood Quality Steels Company, Ellwood National Steel Company, and A. Finkl & Sons*