A-475-840
Remand – Slip Op. 26-44
POR: 07/23/2020 – 12/31/2021
**Public Document**
E&C/OI: PL

*Ellwood City Forge Company v. United States*,
**Court No. 23-00191, Slip Op. 26-44 (CIT April 28, 2026)**
**Forged Steel Fluid End Blocks from Italy**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the remand opinion and order of the U.S. Court of International

Trade (the Court or CIT) in *Ellwood City Forge Company v. United States*, Court No. 23-00191,

Slip Op. 26-44 (CIT April 28, 2026) (*Remand Order*).  These final results of redetermination

concern the final results in the administrative review of the antidumping order on forged steel

fluid end blocks (FEBs) from Italy covering the period of review (POR) July 23, 2020, through

December 31, 2021.[1]  The Court remanded, in part, the *Final Results* for Commerce to explain

further or reconsider its data choice for constructed value (CV) selling expenses and profit, as

well as its valuation of the respondent's major input purchased from an affiliated supplier.[2]

## II.    BACKGROUND

Commerce published its *Final Results* on August 14, 2023.[3]  The respondent in the

underlying administrative review is Lucchini Mame Forge S.p.A. (Lucchini), and the petitioners

in the underlying administrative review is the FEB Fair Trade Coalition, Ellwood Group

---

[1] *See Forged Steel Fluid End Blocks from Italy:  Final Results of the Antidumping Duty Administrative Review; 2020-2021*, 88 FR 55010 (August 14, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Remand Order* at 2.
[3] *See Final Results*, 88 FR at 55010.

(comprised of Ellwood City Forge Company, Ellwood Quality Steels Company, and Ellwood National Steel Company), and A. Finkl & Sons (collectively, the petitioners).[4]  In the first administrative review, Commerce determined CV profit by averaging the profit rates reported by Metalcam SPA (Metalcam), Officina Meccanica Roselli O.M.R. Srl (OMR), Cogne Acciai Speciali SPA (Cogne), and FOC Ciscato SPA (Ciscato).[5]  The CIT remanded the *Final Results* after concluding that Commerce improperly classified Cogne and Ciscato as producers of merchandise identical to the subject merchandise and therefore improperly relied on their financial statements when calculating Lucchini's dumping margin.[6]  The Court emphasized that the review concerned a narrowly defined product, FEBs, whereas Cogne and Ciscato manufactured broader categories of "blocks" or "blocks for tools."[7]  According to the CIT, Commerce did not adequately explain why those products should be considered identical merchandise.[8]  The Court further instructed Commerce to address concerns regarding Ciscato's customer base and the incomplete translation of its financial statements if Commerce chose to continue relying on that data.[9]

In the *Final Results*, Commerce also used Italian market prices to value stainless-steel ingots purchased from Lucchini's affiliated supplier, treating those prices as the benchmark for arm's-length transactions.[10]  The CIT further remanded Commerce's determination regarding the benchmark prices used to construct the market price of ingots, concluding that Commerce failed to adequately explain why Italy was selected as the appropriate market or why certain benchmark

---

[4] *See Final Results* IDM at 1-2.
[5] *Id.* at 8-15.
[6] *See Remand Order* at 14-18.
[7] *Id.* at 15.
[8] *Id.* 16-18.
[9] *Id.* at 18.
[10] *Id.* at 21-22 (citing *Final Results* IDM at 20-23).

transactions were preferred over others.[11]  The CIT also requested clarification as to whether

Commerce relied on the Transactions Disregarded Rule or the Major Input Rule when declining

to adjust Lucchini's reported ingot costs.[12]  Finally, the CIT remanded Commerce's acceptance

of Lucchini's February 2023 rebuttal submission, questioning why the agency accepted

information that Ellwood argued consisted largely of untimely new factual information.[13]

### III.     ANALYSIS

#### 1)  *CV Profit*

In the underlying review, Commerce calculated CV profit by relying on the simple

average profit rates of four companies – Metalcam, OMR, Cogne, and Ciscato.[14]  However, the

CIT remanded the *Final Results*, finding that Commerce improperly concluded that Cogne and

Ciscato produced merchandise identical to the subject merchandise and therefore unlawfully

relied on their financial statements in calculating Lucchini's dumping margin.[15]  The CIT

emphasized that the scope covered a specific subset of FEBs, while Cogne and Ciscato produced

more general "blocks" or "blocks for tools," and Commerce failed to explain how those products

qualified as identical merchandise.[16]  The CIT also directed Commerce to address arguments

concerning Ciscato's different customer base and incomplete translation of its financial

statements if Commerce continued to rely on that data.[17]

With respect to Commerce's calculation of CV profit, Commerce's scope language

states:  "{t}he products covered by this Order are fluid end blocks, whether finished or

---

[11] *Id.* at 18-25.
[12] *Id.* at 25.
[13] *Id.* at 25-31 (citing Lucchini's Rebuttal to Petitioners' Market Price Information for Stainless Steel Ingots," dated February 17, 2023 (Lucchini's Major Input Rebuttal)).
[14] *Id.* at 8 (citing *Final Results* IDM at 13-15).
[15] *Id.* at 14-18.
[16] *Id.* at 15-18.
[17] *Id.* at 18.

unfinished form, and which are typically used in the manufacture or service of hydraulic

pumps."[18]  The scope language further establishes specific height, width, and length ranges, as

well as minimum tensile strength and hardness.[19]  Read together, those specifications indicate

that the scope identifies a defined subset of FEBs, rather than blocks in general.  The record

shows that Cogne and Ciscato produced more general "blocks" or "blocks for tools," and thus

the record supports finding that Ciscato and Cogne do not produce identical merchandise.[20]

Thus, for purposes of these final results of redetermination, we have reconsidered and

reversed our findings that Cogne and Ciscato produce identical merchandise and relied instead

on the financial statements from Metalcam and OMR to calculate CV profit.[21]

2)  *Market Price for Ingots*

In the underlying review, in order to evaluate the arm's-length nature of the affiliated

prices for a major input into the production of the merchandise under consideration, Commerce

conducted a major input analysis on ingots, comparing the transfer price for the ingots to the

market price and the affiliated supplier's cost of production.[22]  The result of the analysis was that

the transfer price was highest among the three and that no adjustment was warranted.[23]  The CIT

remanded Commerce's determination regarding the benchmark prices used to construct the

market price of ingots in this analysis, concluding that Commerce failed to adequately explain

why certain benchmark transactions were preferred over others.[24]  Specifically, the CIT found

---

[18] *See Final Results* IDM at 2.

[19] *Id.* at 2-3.

[20] *Id.* at 14-15 (citing Petitioners' Letter, "Constructed Value Profit and Selling Expense," dated September 23, 2022, at Exhibit 3-C (containing information for Cogne); and Lucchini's Letter, "Comments and Information on Constructed Value Profit and Selling Expenses," dated September 23, 2022, at Exhibit 7 (containing information for Ciscato)).

[21] *See* Memorandum, "Cost of Production and Constructed Value Calculation Adjustments for the Draft Results of Redetermination Pursuant to Court Remand – Lucchini Mame Forge – S.p.A.," dated June 17, 2026.

[22] *See Final Results* IDM at 19-23.

[23] *Id.*

[24] *See Remand Order* at 22-25.

that Commerce failed to justify why Company B's (*i.e.*, an unaffiliated customer of Lucchini's affiliated supplier) purchases from Lucchini's affiliate better reflected arm's-length pricing than Company A's U.S. purchases, which the petitioners argued were the only exact product match.[25] The CIT also requested clarification as to whether Commerce relied on the transactions disregarded rule or the major input rule when declining to adjust Lucchini's reported ingot costs.[26]  Finally, the CIT remanded Commerce's acceptance of Lucchini's February 2023 submission, questioning why Commerce accepted information that the petitioners argued consisted largely of untimely new factual information and was necessary for Commerce's benchmark adjustment analysis.[27]

First, we confirm that we followed the major input rule when deciding whether to adjust Lucchini's reported costs (*i.e.*, we compared the transfer price to the market price and the affiliated supplier's cost of production).[28]  Further, upon reconsideration of the record we agree with the petitioners that we should not have relied on Company B's ingot purchases from Lucchini's affiliate, adjusted by Lucchini's rebuttal information, as the market price for our major input analysis.[29]  Because Lucchini failed to provide the chemical composition of the ingots Company B purchased from Lucchini's affiliate, there is no information on the record to determine whether they are a better match to Lucchini's ingot purchases from its affiliate than Company A's U.S. purchases of arguably identical ingots.[30]  We note that Lucchini did not

---

[25] *Id.*

[26] *Id.* at 25.

[27] *Id.* at 28-31 (citing Lucchini's Major Input Rebuttal at 13).

[28] *See* Memorandum, "Cost of Production and Constructed Value Calculation Adjustments for the Final Results – Lucchini Mame Forge – S.p.A.," dated August 4, 2023.

[29] *See* Lucchini's Major Input Rebuttal; Petitioners' Letter, "Response to Request for Market Price Information for Stainless Steel Ingots," dated February 10, 2023 (Petitioners' Major Input Submission); and Petitioners' Letter, "Rebuttal Brief," dated March 22, 2023, at 30-46.

[30] *Compare* Lucchini's Letter, "Lucchini's Response to the Third Section D Supplemental Questionnaire," dated December 23, 2022, at 2, 5, and Exhibit SD2-7.a, Lucchini's Major Input Submission, *and* Lucchini's Major Input Rebuttal, *with* Petitioners' Major Input Submission.

dispute the petitioners' claim that the ingots purchased in the United States by Company A were the same grade as those used to produce the merchandise under consideration.[31]  Further, Lucchini stated that, despite its efforts, it had been unable to obtain a market price for the specific grade of stainless steel ingots consumed in the production of subject merchandise and that it appeared that such a market price did not exist.[32]  Upon reconsideration, because there is no market price information concerning sales of the specific grade of stainless steel ingot consumed in the production of subject merchandise, for purposes of obtaining a market price, we determine that, in the instant case, product specificity is more reflective of a market price for ingots than a different grade of ingot purchased within the market under consideration.  That is, prices could vary widely for different grades of ingots, and without knowing the chemical composition of the ingots in question, it cannot be discerned how close they are to those used in the production of merchandise under consideration.  Alternatively, purchases of identical ingots within the United States or elsewhere on the open market would be more reflective of the market price than the specific market in which they are purchased, *e.g.*, whether Italy or the United States.  Further, we note that Lucchini could not provide a market price in Italy for the ingots used in the production of merchandise under consideration, and if it did not have its affiliate to supply ingots, Lucchini would have had to obtain the ingots from a non-Italian market.[33] Therefore, for purposes of this remand redetermination we used Company A's purchases of ingots in the U.S. as the benchmark market price in conducting the major input analysis.[34]

Further, we find that market price adjustment information contained in Lucchini's rebuttal submission was untimely new factual information in accordance with 19 CFR

---

[31] *See generally* Lucchini's Letter, "Rebuttal Case Brief," dated March 22, 2023, at 12-23.
[32] *See* Lucchini's Major Input Submission at 2-6.
[33] *Id.*; *see also* Lucchini's Major Input Rebuttal.
[34] *See* Petitioners' Major Input Submission.

351.301(c).  In this case, the information provided by Lucchini in response to the petitioners' provision of market prices for ingots had a material effect on the outcome of the major input analysis, and because it was presented in rebuttal arguments, it did not allow the petitioners an opportunity to rebut the information.[35]  In a rebuttal argument, the petitioners would have the opportunity to dispute the merits of the adjustment affecting the decision of its use.[36] Consequently, we reconsidered the acceptance and unrebutted merits of the adjustment, and upon remand we find Lucchini's submission of the adjustments to Company B's purchase of ingots from Lucchini's affiliate as untimely pursuant to 19 CFR 351.301(c).

In sum, pursuant to the Court's *Remand Order* we have reconsidered and reversed our use of Cogne and Ciscato's financial statements in the calculation of CV profit.  Further, we have reconsidered the benchmark market price used in our major input analysis and reversed our reliance on Lucchini's February 2023 submission.  Based on the results of our analyses, we have recalculated the weighted--average dumping margin for Lucchini which has changed from 2.97 percent to 7.55 percent.[37]

## IV.    INTERESTED PARTY COMMENTS

On June 17, 2026, Commerce released the Draft Results of Redetermination to all interested parties and invited parties to comment.[38]  No parties submitted comments.

## V.    FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we made no changes to the Draft Results of Redetermination.  As a result, consistent with the Draft Results of Redetermination, the

---

[35] *See* Lucchini's Major Input Rebuttal; *Final Results* IDM at 19-23; and 19 CFR 351.301.
[36] *See* 19 CFR 351.301.
[37] *See Final Results*, 88 FR at 55010; *see also* Memorandum, "Draft Results of Redetermination Analysis Memorandum for Lucchini," dated June 17, 2026.
[38] *See* Draft Results of Redetermination Pursuant to Court Remand, *Ellwood City Forge Company v. United States*, Court No. 23-00191, Slip Op. 26-44 (CIT April 28, 2026) (Draft Results of Redetermination), at 7-8.

weighted-average dumping margin for Lucchini for the period July 23, 2020, through December 31, 2021, is as follows:

| Exporter/Producer | Final Results of Redetermination Weighted-Average Dumping Margin[39] (percent) |
|---|---|
| Lucchini Mame Forge S.p.A | 7.55 |

Because the weighted-average dumping margin for Lucchini is different from that in the *Final Results*, we intend to issue a *Timken*[40] notice with the amended final results should the Court sustain these final results of redetermination.

In addition, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

7/24/2026

X _Chris J. Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[39] *See* Memorandum, "Draft Results of Redetermination Analysis Memorandum for Lucchini," dated June 17, 2026.
[40] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).